UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

D'E'MON O'DELL'BEY,
    *Plaintiff*,

v.

MULLIGAN, *et al*.,
    *Defendants*.

No. 3:19-cv-00691 (JAM)

**INITIAL REVIEW ORDER**

Plaintiff D'e'mon O'dell'bey is a pre-trial detainee in the custody of the Connecticut Department of Correction.[1] He ordered certain books to be shipped to him but prison officials refused to let them into the prison on the ground that they were written in code. O'dell'bey has now filed this lawsuit alleging that defendants violated his constitutional rights. After conducting an initial review pursuant to 28 U.S.C. § 1915A, I will allow O'dell'bey's claims to proceed in part.

**BACKGROUND**

O'dell'bey has filed this lawsuit against three defendants: William Mulligan, A. Santiago, and the Media Review Board (MRB). The following facts as alleged in the amended complaint are accepted as true only for purposes of this ruling. During the incidents at issue in the complaint, O'dell'bey was detained in a special management unit at MacDougall-Walker Correctional Institution, where defendant William Mulligan was the unit administrator and warden. Doc. #7 at 3. Defendant Santiago was the Director of Security. *Ibid.* The defendant

---

[1] DOC's website reflects that the inmate number for O'dell'bey traces to an inmate named Jayquan O. Dilday, and O'dell'bey's motion for leave to proceed *in forma pauperis* (Doc. #2 at 2) similarly reflects this alternative name.

Media Review Board (MRB) is also responsible for determining which publications may be admitted into the facility. *Ibid.*[2]

Inmates in the special management unit do not have access to a leisure library or legal library, so O'dell'bey could only access reading material by ordering it from outside sources. *Id.* at 4. O'dell'bey ordered two books that are at issue in his complaint.

On January 19, 2019, he ordered a book titled *Serious Cryptography*, by Jean-Philippe Aumasson. *Ibid.* Mulligan and the MRB rejected the book a month later (presumably when it arrived at the facility), stating that "it was written in code," but with no further explanation.[3] On April 16, 2019, however, Santiago reversed this decision, concluding the book was permissible as educational in nature. *Id.* at 5.

In the meantime, on February 3, 2019, O'dell'bey ordered another book, *The Mathematics of Secrets: Cryptography from Caesar Ciphers to Digital Encryption*, but on March 11, 2019, this was also rejected by Mulligan and the MRB. *Id.* at 4. They stated that the book was "written in code" and "instructed or encouraged [] the commission of criminal activity," but they did not provide more details about why the book was rejected or specify which sections of the book were objectionable. *Ibid.* On April 20, 2019, however, Santiago disagreed with these grounds for rejecting the book but concluded in the alternative that the book should be rejected

---

[2] The Court takes judicial notice of DOC Administrative Directive 10.7 (eff. date 6/19/2012) which governs the subject of inmate communications at DOC facilities and is available on the DOC website: https://portal.ct.gov/DOC/AD/AD-Chapter-10 (last accessed June 14, 2019). The Media Review Board is described as "[a] group of designated Department personnel convened to review with uniformity any and all publications … that are received by the facilities and are deemed questionable as to their admissibility by the Unit Administrator or designee." Conn. DOC AD 10.7(3)(F).

[3] Pursuant to the Regulations of Connecticut State Agencies, "the Unit Administrator may reject [an incoming] publication" under certain circumstances, including when the publication is "written in code" or "encourages or instructs in the commission of criminal activity." Regs., Conn. State Agencies § 18-81-39; *see also* Conn. DOC AD 10.7(N)(1) (describing procedure and criteria for review of publications to allow "reject[ion] of a publication only if it is determined to be detrimental to the security, good order, or discipline of the facility or which may facilitate criminal activity," including among other grounds if "it is written in code").

because "[a]lthough not instructing in the commission of criminal activity, in a correctional environment this information could be used for nefarious purposes." *Id.* at 5.

O'dell'bey disputes the validity of the defendants' reasoning for rejecting his requested publications. He also faults Mulligan and the MRB for failing to advise him of his right to appeal their adverse determinations. He seeks money damages along with declaratory and injunctive relief. *Ibid.*

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater,* 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

*Liability of MRB and official capacity and injunctive relief claims*

As a threshold matter, I will dismiss O'dell'bey's § 1983 claims in their entirety against the MRB because it is a board within a state department that is not itself an independent legal entity constituting a "person" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Fowler v. City of Stamford*, 2019 WL 188695, at *2 (D. Conn. 2019) (division within State of Connecticut agency not a "person" under § 1983); *Petaway v. City of New Haven Police Dep't*, 541 F. Supp. 2d 504, 510 (D. Conn. 2008) (police department not "person" under § 1983).

I will also dismiss O'dell'bey's § 1983 claims for money damages against Mulligan in his official capacity, because "state officials sued in their official capacities under § 1983 are immune from suit for damages pursuant to the Eleventh Amendment." *Currytto v. Doe*, 2019 WL 2062432, at *4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)).

Similarly, I will dismiss as moot O'dell'bey's claims for declaratory and injunctive relief against Mulligan because O'dell'bey is no longer confined at MacDougall-Walker. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). This leaves for consideration only O'dell'bey's individual-capacity claim against Mulligan for money damages as well as for all forms of relief against Santiago.

**First Amendment**

The First Amendment protects the right to free speech and association. U.S. Const. amend. I. A pre-trial detainee has rights under the First Amendment to receive communications from the outside world, but these rights are subject to the interests of prison officials in

maintaining discipline and security. *See, e.g.*, *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (prison regulations limiting incoming publications are valid if reasonably related to legitimate penological interests); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (restrictions on prison mail allowed "only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the particular governmental interest involved") (cleaned up).

O'dell'bey alleges that Mulligan and Santiago blocked his receipt of books without any legitimate security or other penological interest. I will allow this claim to proceed and without prejudice to the right of the defendants to show that there was a valid reason to deny the entry of these books into the prison facility.

### *Due Process*

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The standard analysis for a procedural due process claim "proceeds in two steps: a court first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

According to O'dell'bey, he was denied due process because he was not properly advised of the rejection of his books and his right to appeal. I will allow this claim to proceed for now and without prejudice to the defendants' right to make any showing that O'dell'bey did not have a property or liberty interest or that he received all the process that he was constitutionally due. *See, e.g., Shakur v. Selsky*, 391 F.3d 106, 118-19 (2d Cir. 2004) (discussing procedural due process claim in context of prison's confiscation of inmate's political literature).

## CONCLUSION

Plaintiff's First Amendment and Due Process claims shall proceed against Mulligan and Santiago in their individual capacity for money damages only and against Santiago for injunctive relief. All other claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b).

The Court enters the following orders:

(1) **The Clerk shall** verify the current work addresses of defendants Mulligan and Santiago with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet, containing the Complaint, Amended Complaint, and this Order, to Mulligan and Santiago at the address provided, as well as to the Connecticut Attorney General, within **twenty-one (21) days** of this Order, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint, Amended Complaint, and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their responses to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed by **January 14, 2020**. Discovery requests need not be filed with the Court.

      (6)      All motions for summary judgment shall be filed by **February 14, 2020**.

      (7)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

      (8)      If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

      (9)      Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendants' counsel by regular mail.

      SO ORDERED this 14th day of June 2019 at New Haven, Connecticut.

                                          /s/ ***Jeffrey Alker Meyer***
                                          Jeffrey Alker Meyer
                                          United States District Judge